UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARMON HILL,

    Plaintiff,

v.

                                  Civil Case No. 20-12537
                                  Honorable Linda. V. Parker

WASHTENAW COUNTY
PROSECUTOR'S OFFICE,
ELI SAVIT, and BRIAN MACKIE,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 9) AND DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL (ECF NO. 13)

On September 15, 2020, Plaintiff initiated this lawsuit against the Washtenaw County Prosecutor's Office ("WCPO") and then-Washtenaw County Prosecutor Brian Mackie. (ECF No. 1.) Plaintiff allegedly is suing Mackie in his official and individual capacities. (*Id.* at Pg ID 2, ¶ 1.) Plaintiff filed an Amended Complaint on October 5, 2020, in which he asserted two "*Monell*"[1] claims under 42 U.S.C. § 1983: one against the WCPO and a second against Mackie. (ECF No. 4.) On January 11, 2021, the parties stipulated to the substitution of the current

---

[1] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Washtenaw County Prosecutor, Eli Savit, with respect to only Plaintiff's official-capacity claims against Mackie.  (ECF No. 15.)

The matter is presently before the Court on Defendants' Motion to Dismiss (ECF No. 9) and Plaintiff's Motion to Compel (ECF No. 13).  Both motions have been fully briefed.  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument with respect to the motions.  E.D. Mich. LR 7.1(f).  For the reasons that follow, the Court is granting Defendants' Motion to Dismiss.  Plaintiff's motion to compel is therefore moot.

**I.    Standard of Review – Motion to Dismiss**

Defendants seek dismissal of Plaintiff's Amended Complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  As to Rule 12(b)(1), Defendants argue that Plaintiff's official-capacity claim is barred by sovereign immunity, which is a question of subject matter jurisdiction.  *Spurr v. Pope*, 936 F.3d 478, 485 (6th Cir. 2019).  Defendants' remaining arguments fall under Rule 12(b)(6).

"Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack—which is what Defendants assert here—challenges the sufficiency of the pleading itself.  In that instance, the court accepts the material allegations in the complaint as true

and construes them in the light most favorable to the nonmoving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).

A court similarly accepts as true the factual allegations in a plaintiff's pleading when deciding a Rule 12(b)(6) motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

The presumption that the factual allegations in a plaintiff's pleading are true is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## II. Factual and Procedural Background

Plaintiff is an African American male who was nineteen years old during the incident that gave rise to this action. (Am. Compl. ¶ 5, ECF No. 4 at Pg ID 46.) On July 26, 2019, Plaintiff attended a pool party in Ypsilanti, Michigan, where Andre Smith was murdered. (*Id*. ¶ 47, Pg ID 17; *see also* 10/29/19 Tr. at 15, ECF No. 1-1 at Pg ID 30.)[2] Plaintiff rode to the party with four individuals in Benjamin Craft's vehicle. (Am. Compl. ¶¶ 18-19, ECF No. 4 at Pg ID 47.) During an

---

[2] Plaintiff attached the transcript to his initial complaint. Therefore, the Court may consider it when deciding Defendants' motion. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein.").

interview with prosecutors from the WCPO on August 14, 2019, Craft confessed to shooting Smith (*id.* ¶ 20), and he was charged two days later with open murder, assault with intent to murder, carrying a concealed weapon, assault with a dangerous weapon, and felony firearm (*id.* ¶ 21, Pg ID 48.) During the interview, Craft also implicated Plaintiff as possessing a firearm presumably on the day of the murder. (*Id.* ¶ 31, Pg ID 49.)

In October 2019, the WCPO secured an investigative subpoena to interview Plaintiff as a material witness to the murder. (*Id.* ¶ 22, Pg ID 48.) The subpoena was signed by Washtenaw County Circuit Court Judge David Swartz. (*Id.* ¶ 46, Pg Id 51.) Prosecutor John Vella interviewed Plaintiff on October 8, 18, and 29 in Judge Swartz's courtroom. (*Id.* ¶¶ 22, 23, 52-54, 60, Pg ID 48, 52.) Vella informed Plaintiff of his statutory and constitutional rights before questioning him. (*Id.* ¶ 24, Pg ID 48.) On October 29, Plaintiff refused to answer questions, claiming that he had answered them on previous days, and he asserted his Fifth Amendment privilege to not answer questions the prosecutor was repeating. (*Id.* ¶ 27, Pg ID 27.)

Judge Swartz, at Vella's request, held Plaintiff in contempt of court for refusing to answer the prosecutor's questions. (*Id.* ¶¶ 77-82, 84, Pg ID 54-55.) Judge Swartz informed Plaintiff that he would be sentenced to six months in jail if he refused to answer Vella's questions. (*Id.* ¶ 85, Pg ID 55.) Plaintiff refused,

5

asserting his Fifth Amendment privilege against self-incrimination and Judge Swartz sentenced him to six months imprisonment. (*Id*. ¶¶ 46, 87, Pg ID 51, 55; *see also* ECF No. 19-2 at Pg ID 337-38.)

Plaintiff subsequently was charged with perjury as a result of answers he did provide to Vella's questions. (*Id*. ¶ 91, Pg ID 56.) The prosecutor dismissed those charges on May 10, 2021. (*See* ECF No. 19-4.)

Plaintiff appealed his contempt conviction. The Michigan Court of Appeals affirmed that conviction on January 28, 2021. (ECF No. 19-2.) Plaintiff did not seek review with the Michigan Supreme Court. (*See* ECF No. 19-3.)

Plaintiff filed the instant lawsuit asserting that the WCPO, under Mackie's direction, "has instituted a system to disproportionately discriminate against Blacks" and "has a policy or custom to use the investigative subpoena as a weapon to violate the due process rights of young African Americans[.] (Am. Compl. ¶¶ 16, 94, ECF No. 4 at Pg ID 47, 56.) In the first count of the Amended Complaint, Plaintiff asserts a *Monell* claim under 42 U.S.C. § 1983 against the WCPO based on this alleged policy of "targeting people who are minorities and denying them their civil rights through the improper use of the investigative subpoena." (*Id*. ¶ 105, Pg ID 57.) Plaintiff seeks damages in the amount of $75,000, "along with appropriate declaratory and injunctive relief," and $5 million in punitive damages. (*Id*. at Pg ID 58.) In the second count of his Amended

6

Complaint, Plaintiff asserts that Mackie is liable under § 1983 as the supervisory official who implemented the above policy. (*Id.* ¶¶ 108-09, Pg ID 58.) Plaintiff alleges that Mackie "through his assistant prosecutor" was responsible for requesting the investigative subpoena, interviewing Plaintiff multiple times related to it, and requesting that Plaintiff be held in contempt. (*Id.* ¶¶ 110-12, Pg ID 58-59.) Plaintiff seeks damages of $100,000 for this violation. (*Id.* at 59.)

Defendants filed their motion to dismiss on December 3, 2020. (ECF No. 9.) On December 18, Plaintiff filed a motion to compel Defendants to engage in discovery prior to the Court holding a scheduling conference. (ECF No. 13.) As indicated, on January 11, 2021, the parties stipulated to Savit's substitution for Mackie to the extent Mackie is sued in his official capacity. (ECF No. 15.)

### III. Arguments and Analysis

#### A. WCPO

Defendants first argue in their motion to dismiss that the WCPO is not a person subject to suit under § 1983. (Mot at 7-8, ECF No. 9 at Pg ID 121 (citing cases).) In response, Plaintiff concedes that his claim against the WCPO fails. (Resp. 2-3, ECF No. 17 at Pg ID 291-92.) Plaintiff therefore agrees to dismiss the WCPO as a defendant. (*Id.* at 3, Pg ID 292.)

### B. Official Capacity Claim

Defendants next argue that sovereign immunity bars Plaintiff's official-capacity claim against Mackie, in which Plaintiff seeks only money damages. The Court presumes that this argument applies to Savit, as he has been substituted for Mackie with respect to Plaintiff's official-capacity claim. The section of Plaintiff's response brief purporting to address this argument in fact does not do so, except to assert that "Mackie has failed to cite back to any precedent or statutory law going directly to his conclusion that prosecutors are entitled to any type of immunity when they use investigative subpoenas for unconstitutional purposes." (Resp. Br. at 4-5, ECF No. 17 at Pg ID 293-94.) Plaintiff then cites *Pembaur v. City of Cleveland*, 475 U.S. 469 (1986), for the proposition that "the final policymaker could be culpable under *Monell* for violations of constitutional rights." (*Id*. at 5, Pg ID 294.)

The officials in *Pembaur*, however, were county officials. 475 U.S. at 473-74. Defendants argue, and Plaintiff does not dispute, that the Washtenaw County Prosecutor (Mackie and then Savit) are officers of the State, not a municipality. (Mot. at 9, ECF No. 9 at Pg ID 122 (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 343 (6th Cir. 2009) and other cases).) As the Sixth Circuit explained in *Cady*, "[u]nder Michigan law, county prosecuting attorneys are charged with the duty of 'appearing for the state or county, and prosecute or defend . . . all prosecutions,

suits, applications and motions, whether civil or criminal, in which the state or county may be a party or interested.'" *Cady*, 574 F.3d at 343 (brackets omitted) (quoting Mich. Comp. Laws § 49.153). "This means[,]" the Sixth Circuit explained further, "that [a county prosecutor i]s acting 'as a state agent when [engaging in his or her duties]." *Id*. "[A] suit against [a county prosecutor] in his [or her] official capacity should therefore be treated as a suit against the state." *Id*.

"The Eleventh Amendment bars § 1983 actions against a state, its agencies, and its officials sued in their official capacities for damages." *Id*. at 342 (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Plaintiff seeks only monetary damages from Mackie. *See supra*. Plaintiff does seek "appropriate declaratory and injunctive relief" in Count I of his Amended Complaint but that count is pled only against the WCPO.[3] To the extent the count could be construed to be asserting an official capacity claim against the county prosecutor, any request for prospective relief is moot as Plaintiff alleges only an unconstitutional policy or practice "prior to or during the events" at issue and under Mackie, who is no longer

---

[3] The Eleventh Amendment bars Plaintiff's lawsuit against the WCPO regardless of whether Plaintiff is seeking legal or equitable relief. *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citations omitted). However, Eleventh Amendment immunity does not bar official-capacity suits seeking only prospective or declaratory relief. *Id.* at 278 (citations omitted).

9

the county prosecutor.[4] (*See, e.g.*, Am. Compl. ¶¶ 1, 16, 109, 117, ECF No. 4 at Pg ID 46, 47, 58-59.)

---

[4] Moreover, Defendants raise several additional meritorious arguments supporting the dismissal of Plaintiff's § 1983 claims. For one, as Defendants argue, Plaintiff has not pled sufficient facts to plausibly allege a policy or practice of the WCPO to use investigative subpoenas in a discriminatory manner or a failure to train or supervise employees. Plaintiff does not allege the existence of a formal written policy to target African Americans with investigative subpoenas or any other instance where such subpoenas were issued to African Americans. In his response brief, Plaintiff refers to an August 2020 report by The Citizens for Racial Equity in Washtenaw. (Resp. at 6-7, ECF No. 17 at Pg ID 295-96 (citing ECF No. 13 at Pg ID 196-250).) That report, however, does not discuss the county's use of investigative subpoenas. (*See* ECF No. 13 at Pg ID 196-250.) Threadbare recitals supported by mere conclusory statements are insufficient to survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678. Additionally, Plaintiff cannot establish that any policy or custom was the proximate cause of his injuries, and proximate causation is an essential element of his § 1983 claims. *See Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 659 (6th Cir. 1994). The Sixth Circuit has held that a judge's "intervening act breaks the causal chain when the judge's action is independent from any misrepresentation, omissions, or other wrongdoing by the defendant." *Howell v. Cox*, 758 F. App'x 480, 483 (6th Cir. 2018) (citing cases); *Powers v. Hamilton Cnty. Public Defenders Comm'n*, 501 F.3d 592, 609-10 (6th Cir. 2007). Under Michigan law, investigative subpoenas are issued only at the discretion of a state court judge. Mich. Comp. Laws § 767A.3(1). Plaintiff does not allege that Judge Swartz's signature on the subpoena was "predicated on the misrepresentation or omission of material facts." *Powers*, 501 F.3d at 610. Notably, Plaintiff does not respond to Defendants' proximate-cause argument in his response brief, which amounts to a waiver of the argument. *See Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (recognizing that the plaintiff had waived claim by failing to respond to or refute arguments made by the defendants in the district court); *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013) (same); *Humphrey v. U.S. Att'y Gen.'s Office,* 279 F. App'x 328, 331 (6th Cir. 2008) (holding that the defendant waived any argument on the issue by failing to oppose a motion to dismiss).

For these reasons, the Court concludes that Plaintiff's official capacity claim against Savit must be dismissed.

### C. Individual Capacity Claim

Although Plaintiff claims to be suing Mackie in his individual capacity, both counts in his initial and amended pleading are identified as a *Monell* claim, which is an *official capacity* claim. *See Graham*, 473 U.S. at 165-66. To allege a cognizable claim against Mackie in his individual capacity under § 1983, Plaintiff must set forth facts establishing that Mackie, as a state actor, deprived Plaintiff of a right secured by the Constitution or laws of the United Sates. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Sigley v. City of Parma*, 437 F.3d 527, 533 (6th Cir. 2006)). Individual capacity liability may be premised on only the *individual's* own unconstitutional behavior. *Id.* (citations omitted); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

"Section 1983 liability cannot be premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman*, 680 F.3d at 647 (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)). As the Sixth Circuit held in *Heyerman*, a plaintiff's attempt to hold a state actor liable in his or her

11

individual capacity for allegedly failing to supervise employees or adhering to or continuing an unconstitutional policy "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Id.* (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005) (indicating that where there is an absence of evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed to be brought against them in their official capacities and are treated as claims against the county); *Broyles v. Corr. Med. Services, Inc.*, 478 F. App'x 971, 977 n.1 (6th Cir. 2012) (noting that allegations regarding a prison supervisor's implementation of a policy or practice would be relevant to the prison official's liability in his official capacity). However, Plaintiff's only factual allegations concerning Mackie relate to his supervision of his employees and the purported policy of using investigative subpoenas to deprive African Americans of their civil rights. Plaintiff does not allege that Mackie had any direct role in the investigative subpoena at issue in this lawsuit.

For the above reasons, Plaintiff's individual liability claim must also be dismissed. Having disposed of all of Plaintiff's claims, his motion to compel must be denied as moot.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (ECF No. 13) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 2, 2021